UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RONALD E. TENBRINK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 1:12-cv-01214-TWP-DKL |
| TOSHIBA AMERICA MEDICAL SYSTEMS, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION**

This matter is currently before the Court on Toshiba America Medical Systems, Inc.'s ("Toshiba"), motion to dismiss the complaint of Plaintiff Ronald E. TenBrink ("Mr. TenBrink") for lack of subject-matter jurisdiction and to compel Mr. TenBrink to pursue his claims through arbitration. (Dkt. 14.) For the reasons set forth below, the Court **GRANTS** Toshiba's motion in part, **DENIES** it in part, and **STAYS** the case on its own motion.

**I. BACKGROUND**

Toshiba is a medical supply corporation with principal executive offices located in California, and it provides high-end medical equipment to hospitals and healthcare providers in every state. Mr. TenBrink, a sixty-two year old Indiana resident, began employment with Toshiba on March 1, 1989, and remained employed until his termination on November 21, 2011.

As a condition of his continued at-will employment at Toshiba, in 1995 Mr. TenBrink signed a Mutual Arbitration Agreement ("the Agreement"). The Agreement provided arbitration as the "sole and exclusive remedy" for resolving disputes arising under the Agreement, including disputes regarding employment discrimination based on age or disability. The Agreement also

applied to all disputes arising under federal, state or local laws relating to "Employee's employment or the termination of Employee's employment with Toshiba."

Within the last nine years of his employment, Mr. TenBrink received a combined income of $1,473,351.00, an average of $163,705.00 per year, from Toshiba. On April 17, 2012, Mr. TenBrink rolled over $555,931.56 from his company 401(k) account to his individual T. Rowe Price Account ("IRA Account"), and on June 1, 2012, he rolled over $196,862.71 from his company pension account to his IRA Account as well.

On August 12, 2012, Mr. TenBrink filed this action against Toshiba alleging three causes of action: 1) Toshiba held him to a higher standard than non-disabled employees and terminated him because of his disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"); 2) Toshiba held Mr. TenBrink to a higher standard than younger employees and terminated him while retaining younger employees in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"); and 3) Toshiba terminated him in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA").

Since his termination from Toshiba, Mr. TenBrink has been unemployed and his weekly income consists of $351.00 in unemployment insurance benefits. The unemployment benefits are scheduled to end on November 23, 2013. Although Mr. TenBrink has actively pursued other employment, he has been unsuccessful and has no other source of income. His monthly expenses include a $2,351.81 mortgage payment, and he has been forced to liquidate all of his assets, except for the IRA account described above. In the Agreement, the parties agreed to split all costs of arbitration, which would leave Mr. TenBrink responsible for a minimum of $5,437.50.

On October 23, 2012, Toshiba filed a motion to dismiss Mr. TenBrink's complaint and compel him to pursue his claims in arbitration according to the terms of the Agreement. Mr. TenBrink objected to Toshiba's motion on the grounds arbitration would be prohibitively expensive for him.

## II. LEGAL STANDARD

### A. Enforcement of Arbitration Agreement

Arbitration agreements are viewed favorably under federal law. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)). Whether an issue is subject to arbitration is a matter of contract interpretation. *Kiefer*, 174 F.3d at 909 (citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

The Court may grant a motion to compel arbitration if the moving party demonstrates there has been a written agreement to arbitrate, the dispute falls within the scope of the agreement to arbitrate, and there has been a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005); *see also Estep v. World Fin. Corp. of Ill.*, 735 F. Supp. 2d 1028, 1030 (C.D. Ill. 2010). Questions "concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses*, 460 U.S. at 24-25. The party claiming financial hardship has the burden of showing arbitration would be prohibitively expensive. *Green Tree Fin. Corp.—Ala. v. Randolph*, 531 U.S. 79, 81 (2000).

**B.     Dismissal**

A 12(b)(1) motion "asks the court to dismiss an action over which it allegedly lacks subject matter jurisdiction." *McGreal v. AT & T Corp.*, 892 F. Supp. 2d 996, 1004 (N.D. Ill. 2012) (citing Fed. R. Civ. P. 12(b)(1)). The Court "must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999) (citing *Reuth v. United States EPA*, 13 F.3d 227, 229 (7th Cir. 1993)). Additionally, the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* at 554 (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993) (per curiam)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### III. DISCUSSION

Toshiba moves for a 12(b)(1) dismissal of this case and also seeks an order from this Court instructing Mr. TenBrink to bring his claims through arbitration under the Federal Arbitration Act ("FAA"). Fed. R. Civ. P. 12(b)(1); 9 U.S.C. § 4.[1] Toshiba has created a paradox of sorts. On one hand, the FAA allows district courts to "look through" a § 4 petition to determine if the court has subject-matter jurisdiction over the controversy; if a court does not have subject-matter jurisdiction over the controversy, it cannot compel a party to arbitrate the claim. On the other hand, Toshiba moves for a dismissal of the case for lack of subject-matter jurisdiction. These requests are incompatible, yet they are not pled in the alternative. *Vaden v.*

---

[1] In its motion and accompanying briefs, Toshiba cites 9 U.S.C. § 1, but § 1 defines the terms "maritime transactions" and "commerce" under Title 9 and delineates certain exceptions to the operation of Title 9. The Court assumes Toshiba refers to 9 U.S.C. § 4, which is a better fit to Toshiba's claim and is the section cited by the Seventh Circuit in the case Toshiba cites. *See Zurich*, 417 F.3d at 687.

*Discover Bank*, 556 U.S. 49, 62-63 (2009) (quoting *Moses*, 460 U.S. at 25, n.32 ("noting in dicta that, to entertain a § 4 petition, a federal court must have jurisdiction over the "underlying dispute")). The Court resolves this paradox by denying Toshiba's motion for dismissal for lack of subject-matter jurisdiction, granting Toshiba's Motion to Compel Arbitration, and staying the case on the Court's own motion.

As a predicate matter, the Court finds the Agreement to be a valid arbitration agreement. Mr. TenBrink has not challenged the Agreement's validity. On its face, the Agreement is a written provision involving an agreement to arbitrate future claims, it involves interstate commerce because Toshiba conducts business in all fifty states, and it bears the parties' signatures. Therefore the requirements of § 2, discussed below, are satisfied.

**A.    Subject-Matter Jurisdiction**

Congress enacted the FAA in 1925 to "overcome judicial resistance to arbitration," *Vaden v. Discover Bank*, 556 U.S. at 58 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)), and create "'a national policy favoring arbitration' of claims that parties contract to settle in that manner." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008). In relevant part, § 4 permits a party who seeks arbitration when the other has failed to abide by an arbitration agreement, to petition for an order compelling arbitration in "any United States district court which, save for [the arbitration] agreement, would have jurisdiction under title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties." *Vaden*, 556 U.S. at 62 (citing 9 U.S.C. § 4).

The Supreme Court has rejected the argument that district courts cannot evaluate the subject matter of the underlying controversy in light of § 4. Indeed, district courts can only grant § 4 relief if they find they have subject-matter jurisdiction over the "substantive conflict"

between the parties. *Vaden*, 556 U.S. 62-63 (citing *Moses*, 460 U.S. at 25, n.32). In *Vaden*, Discover Bank sought to compel arbitration after Betty Vaden filed counterclaims against Discover in a state court proceeding. Discover moved to compel arbitration in federal court, and the district court granted Discover's request. Since Discover's complaint in state court did not give rise to federal jurisdiction save for the arbitration agreement, the Supreme Court reversed, and it denied Discover's motion. *Vaden*, 556 U.S. at 72. Therefore, the Court turns to the Complaint in this case to determine whether subject-matter jurisdiction exists.

The Court has federal question jurisdiction over this controversy because Mr. TenBrink's claims all arise under federal law. Mr. TenBrink relies on 28 U.S.C. § 1331, which provides, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. To invoke this jurisdiction, a complaint must be well-pleaded, which means a suit "arises under" federal law "only when the plaintiff's statement of his own cause of action shows that it is based on [federal law]." *Vaden*, 556 U.S. at 59-60 (quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)). Mr. TenBrink's three claims each allege, with factual bases, a violation of a federal law: the Americans with Disabilities Act, the Age Discrimination in Employment Act, and the Family and Medical Leave Act. Therefore, the Court finds Mr. TenBrink's claims "arise under" federal law because Mr. TenBrink has shown they are based on federal law.

**B.    Compelled Arbitration**

Generally, district courts have no discretion to deny a motion to compel arbitration when the parties have signed an arbitration agreement. The FAA states, "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and

6

enforceable." 9 U.S.C. § 2. The FAA requires district courts to compel arbitration of arbitrable claims when a party moves to compel arbitration, and "district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) (citing 9 U.S.C. §§ 3-4) (emphasis in original). Mr. TenBrink does not contest the arbitrability of his claims, so the Court finds he has conceded this point. Indeed, the Agreement enumerated discrimination claims and claims relating to his termination from Toshiba as claims to be arbitrated.

Mr. TenBrink's sole argument is that he cannot afford the cost of arbitration. District courts may decline to enforce arbitration agreements but only "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Mr. TenBrink appears to rely on the Supreme Court's statement in *Green Tree* that "'the existence of large arbitration costs may well preclude a litigant . . . from effectively vindicating' statutory rights in arbitration." 531 U.S. at 81; *James v. McDonald's Corp.*, 417 F.3d 672, 678 (7th Cir. 2005).

The Seventh Circuit in *James* found that high arbitration costs alone did not show arbitration would be prohibitively expensive when a party has not petitioned for a fee waiver from the American Arbitration Association ("AAA"). Parties "seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive [bear] the burden of showing the likelihood of incurring such costs." *James*, 417 F.3d at 679 (quoting *Green Tree*, 531 U.S. at 81). The *James* court found the Eighth Circuit's approach persuasive:

> AAA . . . has a fee waiver procedure. It decides whether or not to waive, in whole or in part, a fee on the basis of a claimant's financial situation. It is clear, however, from our reading of the evidentiary hearing transcript, that the [plaintiff] never fully explored the AAA's fee waiver procedures. . . . This is an important step that must be taken before an unconscionability determination can be made.

*James*, 417 F.3d at 679 (quoting *Dobbins v. Hawk's Enters.*, 198 F.3d 715, 717 (8th Cir. 1999)). The *James* court also found the Fifth Circuit's approach persuasive: "[T]he rules of the AAA provide . . . sufficient avenues to request fee-paying relief, if necessary." Since the Seventh Circuit in *James* found these approaches persuasive, this Court does, too.

Mr. TenBrink has not shown a higher level of financial hardship than Linda James in *James*. The court in *James* affirmed the district court's order to compel arbitration over Linda James's objections, in part, because Linda James had not sought the AAA's fee waiver. Mr. TenBrink makes an extensive showing of the prices the AAA charges, but he dismisses the AAA's fee waiver as speculative and cryptic and complains that the AAA usually only defers its administrative fees, and does not reduce or waive them. Mr. TenBrink's failure to seek the AAA fee waiver weighs heavily against his financial hardship claim. Mr. TenBrink did swear in an affidavit to the Court that he could not afford arbitration and that he has liquidated all assets except his IRA Account,[2] but Mr. TenBrink did not disclose the amount of money within the IRA Account. *Id.*

Unlike Linda James, Mr. TenBrink alleges arbitration is 15.5 times more expensive than filing costs for litigation,[3] but the Court finds his argument unpersuasive. In *James*, the court found that in addition to Linda James's failure to seek an AAA fee waiver, her failure to identify the difference between costs of arbitration and litigation weighed against her financial hardship

---

[2] The Court finds Mr. TenBrink's statement slightly misleading because Mr. TenBrink also swore he makes mortgage payments on his home; it appears Mr. TenBrink has liquidated all assets except his IRA Account *and his home*. (Dkt. 20.) Mr. TenBrink also fails to disclose the equity he possesses in his home. (Dkt. 20.)

[3] Mr. TenBrink arrives at this figure by excluding attorneys' fees because the ADA and ADEA contain fee-shifting provisions under which Toshiba potentially could pay Mr. TenBrink's reasonable attorneys' fees if Mr. TenBrink were to prevail. 42 U.S.C. § 12205; 29 U.S.C. § 626(b). Mr. TenBrink has not addressed whether the FMLA contains a fee-shifting provision, and the litigation expenses relating to his FMLA claim have not been factored into his conclusion that arbitration is 15.5 times more expensive than federal litigation. The Court finds Mr. TenBrink's failure to address the FMLA claim in computing this 15.5 cost differential figure lessens the persuasiveness of his argument.

claim. *James*, 417 F.3d at 679-80. The cost differential between arbitration and litigation can be highly probative, *James*, 417 F.3d at 680, but the differential is only one factor. Mr. TenBrink earned nearly $1.5 million in the past nine years, possesses a house in which he has an undisclosed amount of equity, and he has deposited a minimum of $752,794.27 into his IRA Account within the last 1.5 years. Mr. TenBrink estimates his equal share of minimum arbitration costs is $5,437.50.[4] This value may be 15.5 times more expensive than Mr. TenBrink's filing costs for federal litigation, but Mr. TenBrink has deposited over 138 times the minimum cost of arbitration into his IRA Account over the past 1.5 years. And Mr. TenBrink has not factored in any of the other costs of federal litigation which arguably, could make the costs of arbitration a bargain. Furthermore, it was Toshiba, and not Mr. TenBrink, who brought to the Court's attention the amount of money deposited into his IRA Account. Moreover, Mr. TenBrink's IRA Account remains unliquidated, and he can withdraw money from that account without tax penalties because he is over 59.5 years old. 26 U.S.C. § 72(t)(2)(A)(i).

Given the favorability Congress has given arbitration agreements under § 1 *et seq.*, the amount of money Mr. TenBrink placed in his IRA Account within the past 1.5 years, Mr. TenBrink's statement that he has not liquidated his IRA Account, and the absence in Mr. TenBrink's affidavit of the amount of money in his IRA Account or the equity in his home, the Court finds Mr. TenBrink has not met his burden of showing arbitration would be economically prohibitive.

**C.    Dismissal**

A dismissal for lack of subject-matter jurisdiction would be inappropriate since federal question jurisdiction exists in this case; such a dismissal would also render the Court unable to grant Toshiba's request to compel arbitration. The FAA is an "anomaly" in federal court

---

[4] The Agreement contained a provision saying all costs of arbitration would be split evenly between the parties.

jurisdiction. *Moses*, 460 U.S. at 942, n.32. It does not create independent federal-question jurisdiction, but the Court can only grant an order to compel jurisdiction under § 4 if it would have jurisdiction over the matters "save for" the arbitration agreement. *Id.* Since the Court has federal-question jurisdiction over Mr. TenBrink's claims, the Court denies Toshiba's motion to dismiss for lack of subject-matter jurisdiction.

Because the Court cannot grant Toshiba's request to dismiss the case under Rule 12(b)(1), the Court on its own motion stays the case. Section 3 requires district courts to stay rather than dismiss claims subject to arbitration when one party requests a stay, but the Seventh Circuit has not expressly found that a district court may dismiss a case rather than stay it when all claims are subject to arbitration and a party has not petitioned for a stay. 9 U.S.C. § 3; *Johnson v. Orkin, LLC*, No. 12-141, 2013 WL 828506, at *15 (N.D. Ill. Mar. 6, 2013). Although dismissals of such cases have received substantial support in other circuits. *Id.* (citing cases from the First, Fourth, Fifth, Sixth, and Ninth Circuits in support), in the interest of judicial economy, the Court will stay the case on its own motion in addition to compelling arbitration.

## IV. CONCLUSION

For the reasons set forth above, Toshiba's 12(b)(1) Motion to Dismiss is **DENIED**, and its Motion to Compel Arbitration is **GRANTED** (Dkt. 14). The parties shall proceed with arbitration as provided by the Agreement. Because all of the matters in this suit are subject to arbitration, the underlying proceedings are **STAYED** pending the outcome of arbitration. The parties are to notify the Court of the outcome of arbitration within ten (10) days of conclusion of those proceedings.

**SO ORDERED**.

Date: 06/18/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Sandra L. Blevins
BETZ & ASSOCIATES
sblevins@betzadvocates.com

Benjamin C. Ellis
BETZ & BLEVINS
bellis@betzadvocates.com

Kevin W. Betz
BETZ & BLEVINS
kbetz@betzadvocates.com

Gregory W. Guevara
BOSE MCKINNEY & EVANS, LLP
gguevara@boselaw.com

Jonathan Lamont Mayes
BOSE MCKINNEY & EVANS, LLP
jmayes@boselaw.com